UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CARRIE-ANNE SMITH, in her individual capacity and as next friend of G.S., a minor, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 4:16-CV-1226-CEJ<br>) |
| ROCKWOOD R-VI SCHOOL DISTRICT and ERIC KNOST, | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. Plaintiff filed a response in opposition and the issues are fully briefed.

Plaintiff Carrie-Anne Smith is the mother of G.S. (a minor). She brings this action on his behalf and in her individual capacity against Rockwood R-VI School District[1] and its superintendent for the 2014-2015 academic year, Eric Knost. Plaintiff claims that the defendants violated G.S.'s rights under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 *et seq.* (Counts II and IV) and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Counts I and III). Plaintiff also asserts a claim pursuant to 42 U.S.C. § 1983 (Count V), alleging that the defendants' conduct violated G.S.'s constitutional rights.

### I. Background

---

[1] Plaintiff alleges that Rockwood R-VI School District is a recipient of federal funding, and therefore subject to the IDEA and Section 504 of the Rehabilitation Act. [Doc. #1 at 2]; *see* 20 U.S.C. § 1415(a); 29 U.S.C. § 794(a). And moreover, plaintiff claims that these statutes provide for federal question jurisdiction. [Doc. #1 at 2].

1

According to the complaint, G.S. "suffers from the effects of Autism Spectrum Disorder, Tourette Syndrome, Emotional Disturbance, Major Depression, Obsessive-Compulsive Disorder, and Attention Deficit Hyperactivity Disorder." *Id.* at 2. Consequently, pursuant to the IDEA, G.S. has an Individualized Education Program (IEP).[2] *Id.* The Special School District of St. Louis County (SSD) implements the IEP for G.S.

On September 30, 2014, an assistant principal at Marquette High School (in the Rockwood R-VI School District) suspended G.S. for ten days. On October 15, 2014, an IEP team held a manifestation determination hearing during which it concluded that G.S.'s disability caused or "had a direct and substantial relationship" to the behavior resulting in his suspension.[3] *Id.* at 3; *see* 20 U.S.C. § 1415(k)(1)(E). On October 17, 2014, plaintiff received a letter from defendant Knost, informing her of the District's decision to impose an additional 180-day out-of-school suspension.[4] Allegedly, Knost also stated that plaintiff could "petition the District to commute G.S.'s suspension after 90 days 'with a letter of recommendation from a professional counselor.'" *Id.* Plaintiff states that she procured counseling services in accordance with the letter, but the District barred G.S. from returning to school after ninety days. *Id.* at 4.

On July 1, 2015, plaintiff filed an IDEA due process complaint against the SSD through the Missouri Administrative Hearing Commission (AHC). S*ee* 20 U.S.C.

---

[2] An IEP is the "primary tool for implementing the aims of the IDEA," as it "'tailor[s] the statutorily required 'free appropriate public education' to each child's unique needs.'" *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 592 (8th Cir. 2013) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)).
[3] The IEP team rendered this decision at a required manifestation determination hearing before the suspension exceeded ten days. [Doc. #1 at 3]; *see* 20 U.S.C. § 1415(k)(1)(E)(i).
[4] Plaintiff claims that this letter "reflected a policy, custom, or practice of both [d]efendants." [Doc. #1 at 3].

§ 1415(f)(1). Plaintiff states that "issues of disability discrimination and any damages or relief from past wrongs were excluded from the proceedings in the AHC." [Doc. #1 at 5]. Defendants dispute this description and contend that plaintiff's "due process complaint alleged violations of the IDEA" and "further alleged that she had uncured costs associated with home therapy and treatment at Mercy's Edgewood Program." [Doc. #6 at 2]. The parties stipulate that plaintiff voluntarily dismissed the complaint against SSD during the proceedings and prior to any decision by the AHC.[5] [Doc. #10 at 2; Doc. #11 at 2].

Plaintiff claims that defendants failed to provide alternative, statutorily mandated options following the manifestation determination hearing. Namely, plaintiff alleges defendants should have offered the options of (1) returning G.S. to his pre-suspension placement or (2) consenting to a change in placement for G.S. under his behavior intervention plan. S*ee* 20 U.S.C. § 1415(k)(1)(F). As a result, the defendants substantively and procedurally violated the IDEA and thereby denied G.S. a free appropriate public education. S*ee* 20 U.S.C. § 1415(a). As a proximate result of the long-term suspension, G.S. allegedly suffered "emotional pain, suffering, inconvenience, and mental anguish," "loss of enjoyment of life," deprivation of "educational benefits," and "humiliation and loss of reputation." *Id.* at 4. Plaintiff also argues that the long-term suspension resulted in lost wages, costs for transportation and supervision, home treatment and therapy expenses, as well as attorneys' fees. *Id.*

## II. Legal Standard

### Rule 12(b)(1)

---

[5] Plaintiff describes the agreement as resolving "G.S.'s educational placement and the provision of special education and related services going forward." [Doc. #1 at 5].

"There is a dispute among the Circuit Courts of Appeals whether the failure to exhaust administrative remedies is a jurisdictional requirement under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ('IDEA') or whether exhaustion is merely a condition precedent for filing an IDEA lawsuit." *C.S. ex rel. Scott v. Missouri State Bd. of Educ.*, 656 F. Supp. 2d 1007, 1010 (E.D. Mo. Sept. 8, 2009). The Eighth Circuit has not addressed this issue squarely. *Id.* at 1011. However, in *M.P. ex. rel. K. v. Indep. Sch. Dist. No. 721*, 439 F.3d 865, 867 (8th Cir. 2006), the Eighth Circuit indicated that it considers IDEA exhaustion as a matter of subject matter jurisdiction, that is, the "very power to hear the case." *Id.* (citing *M.P. ex. rel. K. v. Indep. Sch. Dist. No. 721*, 439 F.3d 865, 867 (8th Cir. 2006); *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990)). District courts in the Eighth Circuit have followed suit and evaluated exhaustion arguments as subject matter jurisdiction questions. *Id.* (citing *K.F. ex. rel. Felix v. Francis Howell R-III Sch. Dist.*, No. 4:07-CV-1691-ERW, 2008 WL 723751, at *2 (E.D. Mo. Mar. 17, 2008); *A.C. ex. rel. M.C. v. Indep. Sch. Dist. No. 152*, No. 05-3099-DWF/RLE, 2006 WL 3227768, at *2 (D. Minn. Nov. 7, 2006)). Accordingly, the Court will address defendants' exhaustion arguments under Rule 12(b)(1).

Under Rule 12(b)(1), the movant must successfully challenge the complaint "on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citing *Osborn*, 918 F.2d at 729 n.6). The district court must therefore distinguish between facial and factual attacks. *See B.P. Chem. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 680 (8th Cir. 2002).

When conducting an inquiry based on a facial challenge, a district court will evaluate "whether the asserted jurisdiction basis is patently meritless by looking to

4

the face of the complaint . . . and drawing all reasonable inferences in favor of the plaintiff." *Biscanin v. Merrill Lynch & Co.*, 407 F.3d 905, 907 (8th Cir. 2005) (internal citations omitted). The non-moving party will benefit from all the protections of 12(b)(6). *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Still, the motion will succeed "if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus*, 4 F.3d at 593.

A factual attack on jurisdiction involves an evaluation that extends outside the pleadings. *Osborn*, 918 F.2d at 730. To be sure, the defendant can submit evidence – including affidavits and depositions – and should request an evidentiary hearing. *Titus*, 4 F.3d at 593. A factual challenge places the burden of proving jurisdiction upon the non-moving party. *Osborn*, 918 F.2d at 730 (citing *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In this case, the defendants make a facial attack on subject matter jurisdiction: they assert that even if the complaint's allegations are presumed true, jurisdiction does not lie. *See, D.L. v. Waukee Cmty. Sch. Dist.*, 578 F. Supp. 2d 1178, 1182 (8th Cir. 2008).

### **Rule 12(b)(6)**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)

(stating that a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. *Scheuer*, 416 U.S. at 236. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see id.* at 563 (stating that the "no set of facts" language in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), "has earned its retirement"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–84 (2009) (holding that the pleading standard set forth in *Twombly* applies to all civil actions). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, the motion must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). However, the court may consider materials that are necessarily embraced by the complaint, as well as any exhibits attached to the complaint, without converting the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). In addition, the court may properly consider public records, including court records, on a motion to dismiss. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

Defendants refer to a voluntary dismissal and release executed by the plaintiff in connection with the administrative proceedings. These matters are necessarily embraced by the complaint, which references the administrative proceedings. *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). Accordingly, the defendants' motion for dismissal based on the administrative settlement is properly analyzed under Rule 12(b)(6). *See Duckson v.*

*Cont'l Cas. Co.*, No. 14-1465-MJD/JJK, 2015 WL 75262, at *6 (D. Minn. Jan. 6, 2015) (finding that a release and settlement agreement between the parties "is necessarily embraced by the complaint."); *R.P. ex. Rel. K.P. v. Springdale Sch. Dist.*, No. 06-5014, 2007 WL 552117, at *2 (W.D. Ark. Feb. 21, 2007).

### III. Discussion

#### A. IDEA Claim

The IDEA enshrines two aims: (1) "'ensur[ing] that all children with disabilities have available to them a free appropriate public education,'" and (2) "'ensur[ing] that the rights of children with disabilities and parents of such children are protected.'" *Winkelman v. Parma City Sch. Dist.*, 550 U.S 516, 523 (2007) (quoting 20 U.S.C. §§ 1400(d)(1)(A)-(B)).

Furthermore, "[i]n the IDEA, Congress established procedural safeguards to ensure individuals with disabilities will have the opportunity to obtain a free appropriate public education." *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 592 (8th Cir. 2013) (citing 20 U.S.C. § 1415(a)). Such procedural protections include the Individualized Education Program (IEP) itself, as well as the "'opportunity to present complaints concerning any aspect of the local agency's provision" of the education and an "'impartial due process hearing'" on such complaints. *Id.* at 592 (quoting *Honig v. Doe*, 484 U.S. 305, 311–12 (1988)); 20 U.S.C. § 1415(b)(6), (f). Parents or guardians may challenge the outcome of the aforementioned due process hearings first before the state educational review agency and then before a district court. 20 U.S.C. § 1415(g)(1), (i)(2)(A); *J.B. ex rel. Bailey*, 721 F.3d at 592. And in fact, administrative exhaustion is a condition precedent of a state or federal court proceeding. 20 U.S.C. § 1415(i)(2); *M.P. ex*

7

*rel. K. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 980 (8th Cir. 2003).[6] Moreover, "before parties may bring a claim in district court under a different statute for which they seek relief which is also available under the IDEA, the parties must first exhaust the administrative remedies under the IDEA." *J.B. ex rel. Bailey*, 721 F.3d at 592 (citing 20 U.S.C. § 1415(l)). But, the exhaustion requirement may be excused where it would be futile or inadequate. *M.P. ex. rel. K.*, 326 F.3d at 980. "Nevertheless, the IDEA's exhaustion requirement remains the general rule, regardless of whether the administrative process offers the particular type of relief that is being sought." *Id.* at 980.

### (1) Dismissal and release from liability

According to defendants, the plaintiff's claims in this case are identical to the claims she asserted in the administrative proceeding. Defendant argues for dismissal here, because plaintiff voluntarily dismissed the administrative complaint with prejudice and executed an agreement releasing the Special School District from any claims brought under the IDEA, § 504 of the Rehabilitation Act, and 42 U.S.C. § 1983. Plaintiff does not dispute that she voluntarily dismissed her IDEA due process complaint and signed a release from liability agreement prior to the conclusion of the administrative hearing. She contends, however, that those actions do not bar her from asserting her claims against the defendants in this case.

---

[6] § 1415(i)(2)(A) states, "[a]ny party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2)(A).

Defendants cite to the Missouri State Plan for Special Education, which provides in relevant part:

> Implementation of the Hearing Decision: As a function of the creation of a special school district and as a matter of compliance with the procedural safeguards under IDEA regarding the provision of special education and related services, **both the special and the component district would be bound by any final decision obtained through the administrative hearing process, 34 CFR 300.513.** Implementation of a final decision would be a matter of joint compliance between these districts. [emphasis added]

*State Plan for Special Education, Part B 2016, Regulation IX § 3(D)(5)(b),* https://dese.mo.gov/governmental-affairs/dese-administrative-rules/incorporated-reference-materials/IDEAPartB-2014 (incorporated by reference by 5 Mo. Code of State Regulations, § 20.300.110 (2016)). The defendants argue that, because they are bound by any decision affecting the SSD, they are protected by the administrative dismissal and release.

By its very terms, Regulation IX pertains to the binding effect of a "decision obtained through the administrative hearing process." It does not apply in the instant case, because plaintiff dismissed her administrative complaint before the Administrative Hearing Commission made a final decision. *See* 1 Mo. C.S.R. § 15-3.431 ("[a] notice of dismissal dismisses the complaint . . . without any action by the commission."). S*ee also Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 279 (3d Cir. 2014) (holding that a settlement agreement in an IDEA case is not a final decision issued by a hearing officer).

Moreover, neither party has provided sufficiently specific information about the contents of the release. Indeed, they present conflicting representations of the

terms of the agreement, as well as its scope.[7] Thus, it cannot be said that the release from liability agreement constitutes grounds for dismissal of the complaint under Rule 12(b)(6). *See, e.g., Calon v. Bank of America*, No. 14-00913-CV-W-FJG, 2016 WL 2889077, at *2–3 (W.D. Mo. May 17, 2016). Stated differently, the defendants have not shown that the complaint does not allege "'enough facts to state a claim to relief that is plausible on its face,'" such that dismissal is merited. *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 635 n.11 (8th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### (2) Failure to Exhaust Administrative Remedies

Defendants next argue that plaintiff has not satisfied the exhaustion prerequisite to filing suit under the IDEA and the Rehabilitation Act. Plaintiff counters that exhaustion of administrative remedies is not required in this case because she is seeking "compensatory damages rather than prospective, educational relief." [Doc. #10 at 5]. In the alternative plaintiff responds that administrative remedies would be both inadequate and futile.

### (a) Counts II and IV: IDEA Exhaustion

The IDEA requires a parent, dissatisfied with an educational decision regarding her child, to exhaust state administrative remedies before proceeding to federal court. *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 854 (8th Cir. 2000).

---

[7] Plaintiff claims that "[d]efendants were not released from liability for their part in discriminating against G.S. on the basis of his disability." [Doc. #1 at 5]. Plaintiff also argues that "[p]laintiff and SSD agreed on a resolution of the issues regarding G.S.'s educational placement and the provision of special education and related services going forward, and the Due Process Complaint against SSD was voluntarily dismissed." *Id.* Defendants offer a different interpretation of the release and its effect: "[p]laintiff has already released the responsible entity – Special School District ("SSD") and its agents – from any claims under the IDEA, Section 504 of the Rehabilitation Act, or § 1983." [Doc. #6 at 2]. Defendants add that through plaintiff's release, she "dismissed her administrative claims, with prejudice." *Id.*

This exhaustion requirement is explained under Section 1415(*l*) of the IDEA, which states that:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*).

This section therefore requires that the complaining party has presented her complaints in a resolution session and impartial due process hearing, and has completed all of the attendant procedures pursuant to Section 1415(f). Moreover, she must have challenged the outcome before the state educational review agency pursuant to Section 1415(g).

Although the parties have differing views about the terms and scope of the agreement between the plaintiff and SSD, there is no dispute that an agreement was reached prior to any decision by the AHC. Courts within this circuit have held that voluntary dismissals and settlement agreements do not satisfy the IDEA exhaustion requirement. *See S.A.S. ex rel. W.S. v Hibbing Pub. Sch.*, No. Civ. 04-3204-JRTRLE, 2005 WL 1593011, at *3 (D. Minn. July 1, 2005) (holding that allowing a settlement agreement to satisfy the exhaustion requirement would defeat the policy purposes of exhaustion); *R.P. ex rel. K.P. v. Springdale Sch. Dist.*, No. 06-5014, 2007 WL 552117, at *4 (W.D. Ark. Feb. 21, 2007) (citing *S.A.S.* with approval); *see also R.N. ex rel. Nevill v. Cape Girardeau 63 School District*, 858 F.

11

Supp. 2d 1025, 1031 (E.D. Mo. 2012) (reasoning that plaintiff "voluntarily dismissed her IDEA claim, and therefore, chose not to exhaust administrative remedies"); *cf. R.M. v. City of St. Charles Pub. Sch. Dist.*, No. 4:15-CV-706-CAS, 2016 WL 2910265, at *4–5 (E.D. Mo. May 19, 2016) (where an agreement contained "nothing . . . addressing the release of claims, IDEA claims or otherwise" and successful mediation constituted exhaustion of IDEA administrative remedies). Following this line of authority, the Court finds that plaintiff did not satisfy the exhaustion prerequisite.

Plaintiff argues that exhaustion should be excused due to futility and inadequacy of administrative remedies. The Eighth Circuit has recognized several excuses to exhaustion, (1) futility, (2) "inability of the administrative remedies to provide adequate relief," and (3) "the establishment of an agency policy or practice of general applicability that is contrary to law." *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 594 (8th Cir. 2013) (citing *Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist.,* 198 F.3d 648, 656 (8th Cir. 1999). When evaluating whether exhaustion should be excused, a court should consider the policies underlying the "'intensely practical'" exhaustion requirement. *J.B. ex rel. Bailey*, 721 F.3d at 594 (quoting *Bowen v. City of New York*, 476 U.S. 467, 484 (1986)).

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise and to compile a record which is adequate for judicial review.
> *Bowen*, 476 U.S. at 484 (1986) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)).

Plaintiff argues that exhaustion was futile here. She claims she could not have exhausted her claims against defendant Rockwood R-VI School District and defendant Eric Knost because the Special School District was the "only proper party to defend the Due Process complaint" at the administrative level. [Doc. #10 at 8–9]. The Court agrees that a claim for FAPE denial is properly asserted against the Special School District under Missouri law. This is because under Missouri regulations, "[t]he special school district shall, as a matter of direct compliance, be responsible for initiating and conducting meetings for the purpose of developing, reviewing, and revising an IEP for each eligible student." Missouri State Plan for Special Education, Regulation IX, at 131 (citing 34 C.F.R. § 300.320).[8] However, asserting a claim against an improper party or neglecting to include all responsible parties is not grounds for futility.

Additionally, exhaustion would have permitted the agency to "develop the record for judicial review and apply its expertise" to ascertain "what kind of compensatory education, if any, would have been appropriate, and whether the services for which the [p]laintiff[] seek[s] reimbursement" are appropriate under the IDEA. *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 594–95 (8th Cir. 2013) (reasoning that futility did not excuse exhaustion where plaintiff asserted that a "disability discrimination grievance resolution process could not have been addressed in an IDEA due process hearing"); *see also Dohmen ex rel. Dohmen v. Twin Rivers Pub. Sch.*, 207 F. Supp. 2d 972, 989 (D. Neb. 2002) (reasoning that the "'primary concern in determining whether a plaintiff must utilize the IDEA's

---

[8] Matters of direct compliance include "those requirements of IDEA that can only be complied with by the state's subgrantee"; "[h]ere a special school district will have immediate responsibility for both policy development and implementation of federal requirements." Missouri State Plan for Special Education, Regulation IX, at 128.

13

administrative procedures relates to the source and nature of the alleged injuries . . . not the specific remedy itself,'" and that "'[w]here the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required in order to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem.'" (quoting *Padilla ex rel. Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268, 1274 (10th Cir. 2000)*)*; *c.f. Moubry ex rel. Moubry v. Indep. Sch. Dist. No. 696*, 951 F. Supp. 867, 888–89 (D. Minn. 1996) (finding futility applied where plaintiff exhausted the administrative procedures with regard to IDEA claims, but not as to ADA claims). Accordingly, the Court finds plaintiff's futility argument unpersuasive.

Next, plaintiff asserts inadequacy as an excuse to exhaustion. She cites *M.P. v. Independent School District No. 721*, 438 F.3d 865 (8th Cir. 2006) to support her averment that her claims do not relate to the IEP process. Plaintiff's claims in this case revolve around G.S.'s exclusion from school and the consequential "depriv[ation] of educational benefits," or rather, the denial of a free appropriate public education. [Doc. #1 at 4, 6]. Plaintiff alleges that, as a result, G.S. suffered emotional pain and suffering, loss of enjoyment of life, humiliation, and loss of reputation, and incurred attorneys' fees and costs for treatment, home therapy, and transportation. Although the IDEA may not provide all forms of relief that plaintiff seeks, this does not mean that administrative procedures are inadequate. *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 595 (8th Cir. 2013). All of the relief sought here revolves around G.S's IEP and denial of a FAPE. *See, e.g., McCauley v. Francis Howell Sch. Dist.,* No. 4:15-CV-866-NAB, 2016 WL 795804, at *3 (E.D. Mo. Mar. 1, 2016). Accordingly, exhaustion will not be excused on the grounds of inadequate administrative remedies.

14

The Court concludes that plaintiff has not satisfied the exhaustion prerequisite to bringing an action under the IDEA. Therefore, Counts Two and Four of the complaint will be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

### (b) Counts I and III: Section 504 Exhaustion

"Section 504 of the Rehabilitation Act prohibits discrimination on the basis of handicap in programs receiving federal financial assistance." *M.P.*, 326 F.3d at 981 (citing 29 U.S.C. § 794(a)).[9] To establish a prima facie case under Section 504 of the Rehabilitation Act, the plaintiff must show that "(1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) he was discriminated against on the basis of his disability." *M.P. ex rel. K. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 981–82 (8th Cir. 2003) (citing *Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178 F.3d 968, 971 (8th Cir. 1999)). Defendants do not dispute that plaintiff could make out a prima facie case under Section 504.

Congress made clear that the IDEA would not preclude alternative remedial mechanisms for discrimination against children with disabilities. Specifically, the IDEA states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 1201 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities . . .

---

[9] The statute provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a).

20 U.S.C. § 1415 (l).

Notwithstanding § 1415(l), a plaintiff cannot circumvent the IDEA exhaustion requirement; it still applies to Section 504 claims when a plaintiff seeks the same relief she could obtain under the IDEA. *See M.Y. ex. rel. J.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 888 (8th Cir. 2008); *see also K.F. v. Francis Howell R-III Sch. Dist.*, No. 4:07-CV-1691-ERW, 2008 WL 723751, at *3 (E.D. Mo. Mar. 17, 2008); *R.M. ex. rel. R.M. v. Waukee Cmty. Sch. Dist.*, 589 F. Supp. 2d 1141, 1146 (S.D. Iowa 2008).

Generally, the IDEA's "administrative procedures and remedies were only designed to address prospective educational benefits" rather than past injuries. *M.Y.*, 544 F.3d at 888. Relief available under the IDEA includes the costs of compensatory education, such as "counseling, tutoring, or private schooling." *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 593–94 (8th Cir. 2013); *see also Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. Mass.,* 471 U.S. 359, 369–70 (1985) (holding that under the IDEA a parent may claim reimbursement for private schooling following an improper IEP decision). Parents who prevail in any IDEA action or proceeding may also seek reasonable attorney's fees. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297 (2006) (quoting 20 U.S.C. § 1415(i)(3)(B)). The IDEA does not provide for compensatory damages, however. *J.B.*, 721 F.3d at 593. Plaintiffs cannot recover general and punitive damages under the IDEA. *Hoekstra ex. rel. Hoekstra v. Indep. Sch. Dist. No. 283*, 103 F.3d 624, 626 (8th Cir. 1996).

The Eighth Circuit has also clarified the scope of relief available under Section 504 of the Rehabilitation Act. "Section 504 is a proscriptive, anti-discrimination

16

statute that prohibits discrimination on the part of governmental actors to avoid due process and equal protection violations." *M.P. ex rel. K. v. Indep. Sch. Dist. No. 72*, 439 F.3d 865, 867 (8th Cir. 2006). Rehabilitation Act claims provide for money damages as a remedy. *Rodgers v. Magnet Cove Pub. Sch.*, 34 F.3d 642 (8th Cir. 1994).[10] Although compensatory damages are available, punitive damages are not a permissible remedy for Section 504 violations. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

"[E]ven when a plaintiff's IDEA claim fails for lack of jurisdiction, a Section 504 claim may still be considered." *M.P.*, 439 F.3d at 867. Otherwise stated, a Section 504 claim can still proceed although a plaintiff has not exhausted her administrative remedies. *Id.* at 868 (citing *Thompson v. Bd. of the Special Sch. Dist. No. 11*, 144 F.3d 574, 576 (8th Cir. 1998)). "[W]hen evaluating whether a non-IDEA claim should be dismissed for failure to exhaust administrative remedies, a court should look at the complaint's prayer for relief" and determine whether the plaintiff's "'discrimination claims relate to the IEP process or is 'wholly unrelated' to that process.'" *F. ex rel. Fasnacht v. Missouri State Bd. of Educ.*, No. 4:08-CV-1576-DJS, 2009 WL 2568051, at *5 (E.D. Mo. Aug. 18, 2009) (quoting *J.T. ex. rel. Harvell v. Mo. State Bd. of Educ.*, No. 4:08-CV-1431-RWS, 2009 WL 262056, at *4 (E.D. Mo. Feb. 4, 2009); *see, e.g., C.S. ex rel. Scott v. Missouri State Bd. of Educ.*, 656 F. Supp. 2d 1007, 1012 (E.D. Mo. Sept. 8, 2009) (finding that a plaintiff's Section 504 claims were wholly unrelated to the "development and implementation of [p]laintiff's IEP" and therefore that exhaustion was not required.). And notably, the IEP process includes "individual identification, evaluation, educational

---

[10] 29 U.S.C. § 794(a) incorporates all the remedies available under the Civil Rights Act of 1964. 29 U.S.C. § 794(a)(1).

17

placement, and free, appropriate education (FAPE) decisions." *M.P.*, 439 F.3d at 868.

In support of her Section 504 claim, plaintiff alleges that "the District acted with bad faith or gross misjudgment" and that "its non-compliance with the IDEA deviated so substantially from accepted professional judgment, practice, or standards as to demonstrate that Defendant acted with wrongful intent." [Doc. #1 at 5]. Plaintiff claims that G.S.'s suspension constituted disability discrimination and resulted injuries including, "emotional pain, suffering, inconvenience, and mental anguish," "loss of enjoyment of life," and "humiliation and loss of reputation. *Id.* at 4, 6. In large part, these allegations relate to the IEP process, although plaintiff prays for compensatory damages unavailable under the IDEA.

And, plaintiff oversimplifies Eighth Circuit case law in asserting that "[t]he Eighth Circuit has clearly held that the exhaustion requirement does not apply to claims for damages under § 504." [Doc. #10 at 6]. Plaintiff relies on *M.P. v. Independent School District No. 721* to support that assertion. However, that case is distinguishable – the alleged harassment and bullying that the student in *M.P.* suffered, and from which the school failed to shield him, did not pertain to the IEP process. *See M.P.*, 439 F.3d at 868 (holding that "[t]he School District's alleged failure to protect M.P. from unlawful discrimination on the basis of his disability is a claim that is wholly unrelated to the IEP process, which involves individual identification, evaluation, educational placement, and free, appropriate education (FAPE) decisions."). Plaintiff also cites to *C.S. ex. rel. Scott v. Missouri State Board of Education*. That case is also distinguishable, as the harm asserted in *C.S.* had no relationship to the plaintiff's IEP. 656 F. Supp. 2d 1007, 1012 (E.D. Mo. 2009).

18

Moreover, in *C.S.* a hearing officer rendered a decision with regard to the plaintiff's IDEA claims, rendering that case distinguishable. *Id.*

Here, plaintiff's claims revolve around an IEP team determination, denial of procedural and substantive IDEA rights, and denial of a FAPE. In the complaint plaintiff states that the Section 504 complaint arises from a "non-compliance with the IDEA." [Doc. #1 at 5]. The complaint alleges the same set of facts to support both the IDEA and Section 504 claims. Accordingly, plaintiff has not shown that the Section 504 claims should move forward despite failure to exhaust the IDEA administrative remedies.

### (c) Count V: §1983 Exhaustion

Just as with Section 504 claims, "[t]he IDEA exhaustion requirement applies" to claims brought pursuant to 42 U.S.C. § 1983 "only to the extent that those claims seek relief that is also available under the IDEA." *M.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 888 (8th Cir. 2008). The issue here is whether plaintiff's claims under § 1983 relate to the IEP process. *See, e.g., A.P. ex. rel. L.H. v. Johnson*, No. 14-CV-4022-DEO, 2015 WL 1297534, at *6 (N.D. Iowa Mar. 23, 2015) (holding that the exhaustion requirement did not apply to a § 1983 claim arising from an alleged physical assault as there was "no reason to believe . . . that an IDEA claim could contemplate the type of harm described.")

Plaintiff alleges that defendants "violated G.S.'s rights under the IDEA, § 504, and the United States Constitution" by prohibiting him from returning to school. [Doc. #1 at 8]. Plaintiffs do not cite a specific provision of the Constitution that defendants allegedly violated. Because defendants present a facial challenge to subject matter jurisdiction, the Court cannot look beyond the pleadings. From her

brief assertions, it appears that plaintiff's § 1983 claim arises out of the denial of a FAPE. Indeed, the § 1983 claim "relie[s] on allegations of conduct identical to that giving rise to the IDEA claim." *R.M. ex rel. R.M. v. Waukee Cmty. Sch. Dist.*, 589 F. Supp. 2d 1141, 1147 (S.D. Iowa 2008); *cf. Hough v. Shakopee Pub. Sch.*, 608 F. Supp. 2d 1087, 1109–10 (D. Minn. 2009) (holding that a § 1983 claim did not require exhaustion where the harm arose from an unlawful search). Therefore, Plaintiff should have exhausted the administrative remedies as provided in the IDEA, and her § 1983 claims cannot proceed.

****

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the defendants' motion to dismiss [Doc. #6] is **granted**.

A separate order of dismissal will be entered.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of May, 2017.